***E-FILED - 6/24/11***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KYLE WHELAN AVERY,<br><br>Plaintiff,<br><br>vs.<br><br>CORRECTIONAL OFFICER THOMPSON,<br><br>Defendant. | ) | No. C 03-4233 RMW (PR)<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(Docket Nos. 65, 72, 75, 79, 82, 83, 93) |

Plaintiff Kyle Whelan Avery, a state prisoner, brought this case under 42 U.S.C. § 1983 against Correctional Officer Thompson at San Quentin State Prison ("SQSP"), where he was incarcerated at the time of the underlying events. Plaintiff alleged that defendant unlawfully deprived him of property and violated his First Amendment rights to freedom of speech and religion. The court ordered service of plaintiff's second amended complaint ("SAC") upon defendant. On September 11, 2009, defendant filed a motion for summary judgment on the grounds that no triable issue of material fact existed and that he was entitled to judgment as a matter of law. On October 5, 2010, the court granted in part and denied in part defendant's motion for summary judgment. In the order, the court noted that the denial was without prejudice to renewal if defendant could make the proper evidentiary showing. After requesting

two extensions of time in which to file a renewed motion for summary judgment,[1] defendant filed a renewed motion for summary judgment. Plaintiff filed an opposition. Defendant filed an untimely reply. Plaintiff has also filed, *inter alia*, a motion for summary judgment. Defendant has filed an opposition. Plaintiff has not filed a reply.

Having carefully considered the underlying pleadings and for the reasons discussed below, defendant's renewed motion for summary judgment is DENIED, and plaintiff's motion for summary judgment is DENIED.[2]

**BACKGROUND**[3]

On June 28, 2002, plaintiff was placed in SQSP ad seg while waiting for transport back to his institution at Tehachapi State Prison. (SAC at ¶ 6.) When he arrived at SQSP, as per normal prison procedure, his property was taken to be inventoried. (Id.) Only permitted property items were allowed while in administrative segregation. (Id.) Only when a prisoner was released from administrative segregation might he recover any remaining items which might have been confiscated or stored. (Id.) At that time, defendant was responsible for processing and storing property belonging to new inmates. (Id.; Decl. Thompson at ¶ 2.)

On July 1, 2002, plaintiff received all of his permitted property, and noticed that his religious-based study materials were missing. (Id.) In fact, prison officials confiscated 265 pamphlets, all of which were published by 14 Word Press. (SAC at ¶ 7; Defendant's Original MSJ at 3.) 14 Word Press[4] is a publishing a company founded by white-supremacist David Lane. (Request for Judicial Notice, Ex. A.) The company sold white supremacist paraphernalia as well as Lane's many writings. (Id.)

---

[1] Defendant's January 31, 2011 motion for an extension of time is GRANTED. His March 1, 2011 motion for summary judgment is deemed timely.

[2] Plaintiff's motion for a default judgment is DENIED.

[3] The following facts are undisputed except where indicated.

[4] "14 Words" is a motto created by Lane, meaning, "We must secure the existence of our people and a future for white children." (Request for Judicial Notice, Ex. A.)

Plaintiff inquired about his missing materials and, on July 2, 2002, Thompson replied, "It's with I.S.U." (SAC at ¶ 7.) I.S.U. stands for Investigative Services Unit. Plaintiff was told that the materials were confiscated because I.S.U. concluded the materials were not religious-based but propagated "neo-Nazi" and white supremacy beliefs instead. (Id. at ¶¶ 8-9; Plaintiff's Original Opp. Ex. 4.)

Plaintiff disputed this finding, arguing that the material was not racist; rather his religious belief maintains that "it is racial genocide to involve one's self with or by mixing cultures." (Plaintiff's Original Opp. Ex. 4.) Plaintiff goes on to explain that Odinism is an Aryan culture but it was not synonymous with "neo-Nazi." (Id.) On September 30, 2002, his first level review was denied because he failed to provide proof that the pamphlets met the criteria for being legitimate religious materials. (Id.)

Plaintiff appealed, stating that he was a firm believer in his Wotanism faith. (Id.) On December 13, 2002, the second level reviewer rejected plaintiff's arguments, explaining that it was determined that plaintiff failed to support his complaint with sufficient facts to demonstrate that the pamphlets were considered religious materials and not that of "Neo-Nazi, SkinHead and White Supremacist (Racial Hatred)." (Id.) The reviewer found that, based on a reasonable penological interest, it was reasonable to conclude that the pamphlets were contraband and, therefore, not permitted while plaintiff was incarcerated at SQSP. (Id.)

Plaintiff appealed this decision to the Director's level, stating that the policy for non-permitted items in the institution should not affect his religious materials. (Id.) Plaintiff's appeal was denied on the grounds that the decision to confiscate the materials was based on a reasonable penological interest. (Id.)

**LEGAL STANDARD**

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 323.

**ANALYSIS**

The only claims at issue here are whether defendant violated plaintiff's First Amendment right to free exercise of religion and free speech. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987). However, courts must be aware that they are "ill equipped to deal with the increasingly urgent problems of prison administration and reform." Id. (citation and internal quotation marks omitted). Where the regulations of a state prison are involved, "federal courts have . . . additional reason to accord deference to the appropriate prison authorities." Id. at 85 (citation and internal quotation marks omitted).

In order to establish a violation of either free exercise or free speech, a prisoner must show that the prisoner's constitutional rights were burdened, without any justification reasonably related to legitimate penological interests. See Shaw v. Murphy, 532 U.S. 223, 229 (2001) (free speech) (citing Turner v. Safley, 482 U.S. 78, 89 (1987); Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008) (free exercise). A prison regulation that limits a prisoner's exercise of his constitutional rights will thus be upheld where it "reasonably relate[s] to a legitimate penological interest." Turner, 482 U.S. at 89-90. This determination entails consideration of four factors: (1) whether there is a rational relationship between the regulation and the proffered legitimate government interest; (2) whether inmates have alternative means of exercising their asserted rights; (3) how accommodation of the claimed constitutional right will affect guards, a prisoner's fellow inmates, and the allocation of prison resources; and (4) whether the policy is an "exaggerated response" to the prison's concerns. Id.

The Supreme Court requires that prison officials be given broad discretion in limiting the possession of publications in a volatile prison environment because of the concern that materials targeted to a general audience can circulate among prisoners and cause disruption and disorder. Cf. Thornburgh v. Abbott, 490 U.S. 401, 413 (1989) ("The problem is not . . . in the individual reading the materials in most cases. The problem is in the material getting into the prison.").

In its prior order, the court indicated that it could not determine whether there were genuine issues of material fact regarding whether there was a justification for confiscating plaintiff's materials that was related to legitimate penological interests. Thompson had not submitted any evidence concerning whether the confiscated material advocated violence or illegal activity, or was so racially inflammatory as to likely cause violence at the prison. Thus, the court directed Thompson to file a renewed motion for summary judgment if he could produce such evidence.

A. Defendant's Motion for Summary Judgment

Defendant has moved for a renewed summary judgment. In his renewal, he incorporated his original motion for summary judgment and related exhibits, and added a second declaration

in support of his renewed summary judgment motion.

The only new evidence defendant provides are his statements that he confiscated plaintiff's materials because they were considered "contraband" under the California Code of Regulations. (Decl. Thompson in support of renewed MSJ at ¶ 3.) "Contraband" included "any matter of a character tending to incite murder; arson; riot; or any form of violence or physical harm to any person, or any ethnic, gender, racial, religious, or other group." (Id.) He opined that if he did label plaintiff's pamphlets as "racist," he must have done so because they advocated violence against others. (Id. at ¶ 5.)

On the other hand, plaintiff has insisted that, "The pamphlets may contain a separatist ideology as to the preservation of ones [sic] culture and race as a means to avoid cultural genocide, but it also in advocating that, teaches Odinism and norse mythology and history." (Plaintiff's Original Opp. at 6.) Plaintiff continues to assert that the confiscated materials were not violent in nature, nor did they condone violence, and he attached a copy of a pamphlet previously confiscated to demonstrate its substance. (Plaintiff's Opp. to renewed MSJ at 5.)

The court concludes that defendant has not met his burden of affirmatively demonstrating that no reasonable trier of fact could find other than for the moving party. Although defendant has presented arguments and case law in which the Ninth Circuit has addressed similar issues, he has not presented supporting facts or evidence demonstrating that the confiscated materials posed a threat to prison security.[5]

There is no doubt that publications and documents that advocate violence or are so racially inflammatory so as to potentially lead to violence in the prison can be constitutionally prohibited on the ground that it is rationally related to a legitimate governmental interest. While prison officials may well be within their discretion to ban possession of those materials in the prison, it is defendant's burden to demonstrate a non-conclusory connection between the

---

[5] Notwithstanding defendant's presumption that if he had indeed labeled plaintiff's materials as racist, he would have only done so if he believed they promoted violence, the court must draw all reasonable inferences in favor of plaintiff, and must regard as true plaintiff's evidence, supported by affidavits or other evidentiary material. See Celotex, 477 U.S. at 324.

materials confiscated and any legitimate concerns.

Because defendant has not met his burden, the court cannot determine whether the confiscation of plaintiff's materials was justified, and he is not entitled to judgment as a matter of law. See, e.g., Harper v. Wallingford, 877 F.2d 728, 732-33 (9th Cir. 1989) (affirming summary judgment grant after relying on prison superintendent's affidavit stating that the challenged materials could lead to violence, and explaining why the possession of such materials could lead to a security threat); Singer v. Raemisch, 593 F.3d 529, 536 (7th Cir. 2010) (affirming summary judgment regarding confiscation of "D & D" game-related materials after relying on prison officials' explanation as to how "D & D" game mimicked gang behavior); Mayfield v. Texas Dept. of Criminal Justice, 529 F.3d 599, 610-11 (5th Cir. 2008) (finding that the confiscation of runestones was rationally related to a legitimate penological interest after the institution proffered several reasons to support its determination); compare Stefanow v. McFadden, 103 F.3d 1466, 1473 (9th Cir. 1996) (deferring to prison authorities' concern that book that issued a "call to arms" for white Christians to "fight back" was so inflammatory that it would reasonably incite violence in the institution), with McCabe v. Arave, 827 F.2d 634, 636, 638 (9th Cir. 1987) (finding that a total ban on storing Church Jesus Christ Christian literature, although it encouraged racial hatred and revenge, was improper where there was no evidence that the literature advocated "violence or illegal activity as a means of achieving this goal, and [was] not so racially inflammatory as to be reasonably likely to cause violence at the prison").

Accordingly, defendant's motion for summary judgment is DENIED.

B. Qualified Immunity[6]

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald,

[6] Defendant raised the defense of qualified immunity in his original MSJ. In his renewed MSJ, he incorporated all arguments and evidence from his original MSJ. Because the court did not address his qualified immunity argument in its order denying his original MSJ, the court does so now.

457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to determine whether qualified immunity exists. The court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. See id. If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Although Saucier required courts to address the questions in the particular sequence set out above, courts now have the discretion to decide which prong to address first, in light of the particular circumstances of each case. See Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

In order to determine whether the right was "clearly established, "the contours of the right must be sufficiently clear so that a reasonable official would know that his conduct violates that right." Browning v. Vernon, 44 F.3d 818, 823 (9th Cir. 1995). Here, between Stefanow v. McFadden, 103 F.3d 1466 (9th Cir. 1996), and McCabe v. Arave, 827 F.2d 634 (9th Cir. 1987), the right was clearly established that materials which encouraged racial purity, but did not advocate violence and was not "so racially inflammatory as to be reasonably like to cause violence at the prison" could not be banned or confiscated under the First Amendment.

Thompson argued that he was entitled to qualified immunity because, even if his conduct was found to be unconstitutional, it would not have been clear to a reasonable prison official that such conduct was unlawful because he was acting in accord with the California Code of Regulations. However, the state regulations do not establish the existence or scope of the federal constitutional right, and existing case law would suggest that compliance with state regulations – such as the broad one here which allowed for confiscation of anything deemed contraband within

the prison – would not shield a prison official from liability for constitutional violations. See generally Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (CDCR operations manual describing duties that, if performed, would have avoided the alleged wrong to plaintiff, were irrelevant to qualified immunity inquiry because they did not establish a federal constitutional right); California Attorneys for Criminal Justice v. Butts, 195 F.3d 1039, 1049-50 (9th Cir. 2000) (denying qualified immunity to defendants who interrogated suspects in violation of Miranda, notwithstanding training material permitting such interrogations and Supreme Court opinions allowing the use of such interrogations for impeachment). Defendant is not entitled to qualified immunity.

C. Plaintiff's Motion for Summary Judgment

Plaintiff also moved for summary judgment, arguing that defendant has failed to "prove" that the prison had a legitimate interest in confiscating plaintiff's materials. (Plaintiff's MSJ at 7.) Viewing the evidence in the light most favorable to defendant, the non-moving party, see Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999), there are material facts which preclude the entry of summary judgment for plaintiff as well. A reasonable inference can be made that prison officials believed that, in light of the infamous history of David Lane, the founder of 14 Words, who published the confiscated works (Req. for Judicial Notice, Ex. A), along with the sample pamphlet submitted by plaintiff entitled, "Focus Fourteen Origins," (docket no. 91) which was one of the pamphlets confiscated, the 265 pamphlets confiscated were so racially inflammatory so as to cause concern for prison security. Cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (recognizing that the court must draw all reasonable inferences in favor of the non-moving party). Adding to that evidence defendant's personal belief that he would not have confiscated the materials unless they advocated violence, and the court concludes that there exists a genuine issue of material fact.

Accordingly, plaintiff's motion for summary judgment is DENIED.

C. Referral to Pro Se Prisoner Settlement Program

Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff for that purpose, the court finds good cause to refer this matter to Judge Vadas pursuant to the

Pro Se Prisoner Settlement Program for settlement proceedings on the claims set forth above. The proceedings will consist of one or more conferences as determined by Judge Vadas. The conferences shall be conducted with defendant, or the representative for defendant, attending by videoconferencing if they so choose. If these settlement proceedings do not resolve this matter, the court will then set this matter for trial and consider a motion from plaintiff for appointment of counsel.

**CONCLUSION**

1. Defendant's renewed motion for summary judgment is DENIED. Plaintiff's motion for summary judgment is DENIED. Plaintiff's motion for a default judgment is DENIED.

2. The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the remaining claims in this action, as described above. The proceedings shall take place within **one hundred-twenty (120) days** of the filing date of this order. Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings. If these settlement proceedings to do not resolve this matter, plaintiff can file a renewed motion for appointment of counsel and the court will then set this matter for trial.

3. The clerk of the court shall mail a copy of the court file, including a copy of this order, to Judge Vadas in Eureka, California.

4. The instant case is STAYED pending the settlement conference proceedings.

In light of the disposition of the parties' motions for summary judgment, the Clerk shall terminate all remaining motions.

IT IS SO ORDERED.

DATED: 6/24/11

Ronald M. Whyte

RONALD M. WHYTE
United States District Judge